UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CITY OF HOLLYWOOD FIREFIGHTERS') PENSION FUND, Individually and on behalf of all others similarly situated, | ) ) ) | Case No. 1:17 CV 1677 |
| | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| Plaintiff, | ) | CLASS ACTION |
| vs. | ) ) | |
| TRANSDIGM GROUP, INC., *et al.*, | ) ) | |
| Defendants. | ) | |

_____

| | | |
|---|---|---|
| CITY OF WARREN POLICE AND FIRE RETIREMENT SYSTEM, Individually and on behalf of all others similarly situated, | ) ) ) | Case No. 1: 17 CV 1958 |
| | ) | JUDGE DONALD C. NUGENT |
| Plaintiff, | ) | CLASS ACTION |
| | ) | |
| TRANSDIGM GROUP, INC., *et al.*, | ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Both pension fund plaintiffs in the above captioned related actions have filed motions to consolidate the actions and for appointment as Lead Plaintiff and Lead Counsel.

### PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff City of Hollywood Firefighters' Pension Fund filed the first action against Defendants TransDigm Group, Inc., W. Nicholas Howley and Terrance Paradie (collectively "TransDigm") on August 17, 2017, on behalf of all persons who purchased the securities of TransDigm Group, Inc. between May 10, 2016 and January 19, 2017. (Case No. 17 CV 1677). The second action was filed on September 18, 2017, by the City of Warren Police and Fire

Retirement System on behalf of all persons who purchased the securities of TransDigm Group, Inc. between May 10, 2016 and March 21, 2017. Both actions allege that Defendants violated §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5 during the Class Periods.

The Complaints allege that during the class periods, TransDigm, a global designer, producer, and supplier of highly engineered components for use on commercial and military aircraft, issued materially false and misleading statements and/or failed to disclose material adverse facts regarding the Company's operations, business, and prospects. Specifically, Plaintiffs' allege that TransDigm failed to disclose that it used shell distributors it controlled to make noncompetitive government bids seem competitive, monopolistic tactics to hike the prices of its proprietary products, and a variety of tactics to evade government oversight of its cost structure and avoid government scrutiny. As a consequence, Plaintiffs assert that TransDigm's growth and profitability during the class period were artificially inflated and that TransDigm shares traded at artificially inflated prices during the class period.

On January 20, 2017, Citron Research, a well known short seller, issued a report accusing TransDigm of being the "Valeant of the aerospace industry." The report disclosed TransDigm's allegedly illicit business practices. As a result of this news, the price of Transdigm shares dropped 10 percent overnight to close at $226.90 per share on January 20, 2017.

Then on March 21, 2017, the office of U.S. Congressman Ro Khanna announced it had sent a letter to the Inspector for the Department of Defense requesting that it conduct an investigation into TransDigm's business practices, raising concerns that the company was acting

as a hidden monopolist by engaging in a series of unreasonable price increases for products for which the company was the only supplier and disguising its cost structure to evade Pentagon oversight. As a result of this news, the price of TransDigm shares dropped nearly 10 percent over two trading days to closing at $214.85 per share on March 22, 2017.

## DISCUSSION

### A. Consolidation

Under Fed. R. Civ. P. 42(a), a court may consolidate actions which involve common questions of law or fact. The Plaintiffs in both actions agree that the actions present similar factual and legal issues in that each alleges claims under Sections 10(b) and 20(a) of the Exchange Act, against the same Defendants that arise out of substantially similar misstatements regarding the Company's business, operations, and practices. Courts agree that "consolidation is particularly appropriate in securities class action litigation." *French v. CBL & Assoc. Props, Inc.*, No. 1:16 CV 165, 2016 WL 7668501, at *1 (E.D. Tenn. Sept. 26, 2016). The parties agree that the fact that one complaint asserts a slightly longer class period does not make consolidation inappropriate. Because these actions involve common questions of law and fact, the Parties' motions to consolidate will be granted.

### B. Lead Plaintiff and Lead Counsel

Hollywood Firefighters Pension Fund ("Hollywood Firefighters"), plaintiff in Case No. 17 CV 1677, moves pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4 ("PSLRA") for appointment as Lead Plaintiff and approval of its counsel, Saxena White P.A., as Lead Counsel and Climaco Wilcox Peca & Garofoli Co., LPA to serve as Local Counsel for the class. (ECF #17, #15). Similarly, District No. 9, I.A. of M. & A.W. Pension Trust

("Pension Trust"), plaintiff in Case No. 17 CV 1958, moves for appointment as Lead Plaintiff, and approval of its counsel, Robbins Geller Rudman & Dowd LLP, as Lead Counsel and Landskroner Grieco Merriman, LLC as Local Counsel. (ECF #18, #16).

Under the PSLRA, a court should appoint as lead plaintiff the "member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of the class members," in other words–the most adequate plaintiff. 15 U.S.C. §78u-4(a)(3)(B)(I). The movant that timely demonstrates it has "the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23" is entitled to a presumption that it is the most adequate plaintiff. The PSLRA does not specify which test should be used to determine which plaintiff has the "largest financial interest in the relief sought by the class." Some courts simply determine which potential lead plaintiff has suffered the greatest total losses, while other courts apply the *Lax* four factor test which examines (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period. *See Takara Trust v. Molex, Inc.*, 229 F.R.D. 577, 579 (N.D. Ill 2005)(looking solely at greatest losses); *In re the Goodyear Tire & Rubber Co. Se. Litig.*, No. 5:03 CV 2166, 2004 WL 3314943 at *3 (N.D. Ohio May 12, 2004)(applying *Lax* factors and collecting cases); *Lax v. First Merch. Acceptance Corp.*, No. 97 Civ 2715, 1997 WL 461036 at *5 (N.D. Ill. Aug. 11, 1997). As the approximate losses suffered is an element of the *Lax* test, this Court will weigh all four factors to select the lead plaintiff in this case. All four factors will be given equal weight. *See Pio v. General Motors Co.*, No. Civ. 14-11191, 2014 WL 5421230 *4 (E.D. Mich. Oct. 24, 2014)(refusing request to

disregard first three factors in favor of the fourth noting "the first three factors provide the most objective measurement of a movant's stake in the litigation because the fourth factor is heavily dependent on the method applied and numbers chosen to calculate losses.")

The first factor is the number of shares purchased during the class period[1]. Hollywood Firefighters purchased a total of 1,610 shares of TransDigm stock during the class period while Pension Trust purchased a total of 1,155 shares. This factor demonstrates that Hollywood Firefighters purchased more shares than Pension Trust at allegedly fraudulently inflated prices.

The second factor is the net shares purchased which is the amount of shares purchased minus the amount of shares sold during the class period. The thought is that a plaintiff who sells during the class period has benefitted from the fraudulently inflated price of the stock while shareholders who hold on to their stock throughout the class period are left holding the bag when the fraud is revealed and the price of the stock drops. In this case Hollywood Firefighters purchased 1,007 shares on a net basis compared to zero net shares purchased by Pension Trust. Pension Trust sold out its position of TransDigm during the class period.

The third factor is the net funds expended on the relevant securities during the class period. The net funds expended is the difference between the total funds the investor spent to purchase the securities less any funds received from the sales of the securities. The net funds expended by Hollywood Firefighters during the class period was $289,640 while the net funds expended by Pension Trust was $76,311.

The fourth factor is the approximate losses suffered during the class period. Hollywood

---

[1]

The Court will use the longest suggested class period for this analysis from May 10, 2016 through March 21, 2017.

Firefighters suffered losses of approximately $40,905 while Pension Trust suffered approximate losses of $76,311. The difference between the approximate losses of the two potential lead plaintiffs is $35,406.

Analysis of the first three factors weighs overwhelmingly in favor of Hollywood Firefighters while the last factor supports Pension Trust. Based upon the facts of this case, the Court finds that the difference in the approximate losses does not overcome the combined weight of the first three factors. Accordingly, based upon the *Lax* factors, Hollywood Firefighters has the largest financial interest in the relief sought by the class.

The lead plaintiff must also satisfy the requirements of Fed. R. Civ. P. 23. See 15 U.S.C. §78u-4(3)(B)(iii)(I)(cc). Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4). "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and if his or her claims are based on the same legal theory.'" *Beattie v. Century Tel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007(citation omitted.) "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. . . . '[A] class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members.'" *Amchem Prods. v. Windsor*, 521 U.S. 591, 625-26 (1997)(citations omitted). Hollywood Firefighters asserts that it satisfies the typicality requirement of Rule 23 because its claims and the claims of all other class members arise from the same course of events and their legal arguments to establish Defendant's liability are nearly identical.

Hollywood Firefighters also asserts that it has demonstrated its adequacy because its interests of are perfectly aligned with those of the other class members, and are not antagonistic in any way. Hollywood Firefighters has suffered the same injury as the class. Hollywood Firefighters was responsible for initiating this litigation by investigating, drafting and filing the first complaint in this action. Hollywood Firefighters also issued the PSLRA-mandated notice advising TransDigm shareholders of the pendency of the action and the lead plaintiff deadline. These actions on behalf of the class demonstrate the adequacy of Hollywood Firefighters as lead plaintiff. *See Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecommunications Corp.*, 2010 WL 3924862, at *6 (E.D.N.Y. Aug. 17, 2010), report and recommendation adopted, 2010 WL 3909331 (E.D.N.Y. Sept. 29, 2010)(appointing as lead plaintiff the institutional investor that "has demonstrated its 'willingness to vigorously pursue its claims' by initiating this action, moving to consolidate, and submitting the Certification.") The Court finds that Hollywood Firefighters has satisfied the requirements of Rule 23.[2] Having determined that Hollywood Firefighters has demonstrated that it has the largest financial interest in the relief sought by the class and that it otherwise satisfies the requirements of Rule 23, Hollywood Firefighters will be appointed as lead plaintiff

Finally, Hollywood Firefighters requests that the Court approve its selection of Saxena White as Lead Counsel. The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. See 15 U.S.C. §78u-4(a)(3)(B)(v). Courts should not disturb a lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15

---

[2] Both Hollywood Firefighters and Pension Trust argue that they meet the requirements of Rule 23. Neither has asserted that the other fails to satisfy the requirements of Rule 23.

U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa). It appears that Saxena White has extensive experience in prosecuting complex litigation on behalf of shareholders and has acted as lead or co-lead counsel in a number of major securities class and derivative actions nationwide. There has been no evidence presented to the Court that would indicate that Saxena White is not capable of prosecuting this action in the best interests of the putative class. Similarly, there is no evidence to override Hollywood Firefighters' selection of Climaco Wilcox Peca & Garofoli, as local counsel. Climaco Wilcox is a local Cleveland firm specialized in prosecuting complex litigation. Accordingly, Hollywood Firefighters' selection of lead counsel and local counsel will be approved.

Accordingly, it is hereby ordered that:

1. The Motion of Hollywood Firefighters' to Consolidate and for Appointment as Lead Plaintiff and Motion for Approval of its Selection of Lead Counsel (ECF #17 in Case No. 1:17 CV 1677 and ECF #15 in Case No. 1:17 CV 1958) is GRANTED. The above-captioned related actions are hereby consolidated as In re TransDigm Group, Inc. Securities Litigation, Master File No. 1:17 CV 1677.

A. The file in Case No. 1:17 CV 1677 shall constitute the master file for every action in the consolidated action. When the document being filed pertains to all actions, the phrase "All Actions" shall appear immediately after the phrase "This Document Relates To:". When a pleading applies to some, but not all, of the actions, the document shall list, immediately after the phrase "This Document Relates To:", the docket number for each individual action to which the document applies, along with the last name of the first-listed plaintiff in said action;

B. All securities class actions against any or all of the defendants subsequently

filed in, or transferred to, this District shall be consolidated into this action. This Order shall apply to every such action, absent an order of the Court. A party objecting to such consolidation, or to any other provision of this Order, must file an application for relief from this Order within ten days after the action is consolidated into this action.

2. Hollywood Firefighters is **APPOINTED** to serve as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995, in the consolidated action.

3. Hollywood Firefighters' selection of Lead Counsel is **APPROVED**, and Saxena White P.A. is **APPOINTED** as Lead Counsel for the Class, and Climaco Wilcox Peca & Garofoli Co., LPA is **APPOINTED** as Local Counsel for the Class.

IT IS SO ORDERED.


_/s/Donald C. Nugent_
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

DATED:   December 4, 2017